IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DANIEL VIRNICH,
BASIC PRODUCTS, INC.,
CEPRO, INC. and VIRDANCO, INC. ,                    OPINION AND ORDER

               Plaintiffs,

                                          09-cv-340-vis[1]

     v.

JEFFREY VORWALD, MICHAEL POLSKY,
BECK, CHAET, BAMBURGER & POLSKY, S.C. and
AMERICAN TRUST AND SAVINGS BANK

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiffs Daniel Virnich, Basic Products, Inc., CePro, Inc. and Virdanco, Inc. bring

this civil action for monetary relief against defendants Jeffrey Vorwald, Michael Polsky,

American Trust and Savings Bank and Beck, Chaet, Bamburger & Polsky, S.C. for acts

related to the appointment of defendant Polsky as receiver for Communications Products

Corporation.  Plaintiffs assert five causes of action in their amended complaint.  These are:

(1) conspiracy to injure plaintiff Virnich's reputation, trade, business or profession in

      [1]   The parties have declined jurisdiction of the magistrate judge in this case.  Because
no Article III judge has been assigned, I am assuming jurisdiction over this case for the
purposes of this order only.

violation of Wis. Stat. § 134.01; (2) conspiracy to restrain Virnich from performing a lawful act or acts in violation of Wis. Stat. § 134.01; (3) interference with contractual relations; (4) negligence; and (5) negligent training and supervision. Jurisdiction is present; the parties are of diverse citizenship and more than $75,000 is in dispute.

Now before the court are motions to dismiss the amended complaint filed by defendants Vorwald and American Trust and Savings Bank and by defendants Polsky and Beck, Chaet, Bamburger & Polsky. As discussed at more length below, I am granting defendants' motions because plaintiffs are asserting claims that can be brought only in a derivative suit on behalf of Communications Products Corporation.

Although it is not customary to consider extrinsic evidence when deciding a motion to dismiss, in this case, defendants have attached a number of documents to their motions that are related to the state receivership action and a proposed derivative action. These include "Agreement to Sell and Releases," as well as motions, judicial orders and transcripts of testimony in prior judicial proceedings related to the receivership case. They contend and plaintiffs do not disagree that the documents may be treated as part of the complaint because they are referred to in the complaint, they are central to plaintiffs' claims and they are court records subject to judicial notice. The documents will be treated as part of the complaint. Venture Associates Corp. v. Zenith Data Systems Corp., 987 F.2d 429, 431 (7th Cir. 1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are

2

referred to in the plaintiff's complaint and are central to [its] claim.").

From plaintiffs' complaint and the documents attached to defendants' motions, I find that plaintiffs have fairly alleged the following facts relevant to the motions to dismiss.


ALLEGATIONS OF FACT

A.  <u>The Parties and Related Entities</u>

Plaintiff Daniel Virnich is a businessman and venture capitalist who is a citizen and resident of Florida.  Plaintiff Virdanco, Inc. is a personal holding company incorporated under the laws of Illinois with its principal place of business in Illinois.  Plaintiff CePro, Inc. is incorporated under the laws of Illinois with its principal place of business in Colorado. Plaintiff Basic Products, Inc. is a holding company incorporated under the laws of Illinois with its principal place of business in Colorado.  Non-party Communications Products Corporation is a Delaware corporation with its principal place of business in Wisconsin. Virnich owns 100% of Virdanco; Virdanco owns 50% of CePro; CePro owns 100% of Basic Products; and Basic Products owns 100% of Communications Products.  In effect, plaintiff Virnich holds a 50% ownership interest in Communications Products.  Non-party Jack Moores holds the other 50% interest.

Defendant American Trust and Savings Bank is an Iowa banking institution with its principal place of business in Iowa.  Defendant Jeffrey Vorwald is a citizen of Wisconsin.

3

In 2003, he was employed by American Trust and Savings Bank as Senior Vice President. Before holding this position, he was vice president of commercial lending and correspondent banking.

Defendant Beck, Chaet, Bamburger & Polsky, S.C. is a law firm incorporated in Wisconsin with its principal place of business in Wisconsin. Defendant Michael Polsky is a citizen of Wisconsin and a lawyer, partner and director at Beck, Chaet, Bamburger & Polsky, S.C.

B.  Events Leading Up to the Appointment of Defendant Polsky as Receiver

Beginning in 1965, Communications Products was in the business of manufacturing component parts for loudspeakers. In 1987, plaintiff Virnich and Jack Moores became officers of the company.

In 1999, Communication Products entered into several loan agreements with defendant American Trust. In connection with the agreements, the company agreed to a covenant with American Trust that required it to retain at least $900,000 of net worth.

From approximately late 2001 through 2002, Communications Products experienced some financial difficulty. On April 24, 2003, defendant American Trust held a meeting at the company with plaintiff Virnich, Moores and several management employees. During the meeting, defendant Vorwald demanded additional collateral or repayment of certain

4

obligations by the company.  After the meeting, defendant Vorwald and another American

Trust official made a "determination" that Communications Products was insolvent, based

on unrecorded calculations from a "best guess estimate" of the value of Communications

Products' assets and liabilities "on a liquidation basis."


C.  The Receivership Action

On June 3, 2003, defendant American Trust brought an ex parte motion in the

Circuit Court for Grant County, Wisconsin for appointment of a receiver for

Communications Products.  On June 3, 2003, Judge Robert P. VanDeHey granted defendant

the motion and appointed defendant Polsky as an interim receiver for Communications

Products.  Plaintiff Virnich and Moores were not aware of the hearing that resulted in the

court's appointment of a receiver.  They and Communications Products suffered immediate,

irreparable harm from the appointment.

 On September 9, 2003, Communications Products and plaintiff Basic Products

entered into an Agreement to Sell and Releases with defendants Polsky and American Trust

to allow the sale of assets at an extremely discounted value.  The Agreement states:

> [Basic Products] withdraws the objection it filed on behalf of CPC to the
> appointment of Michael Polsky as receiver for CPC in Grant County Circuit
> Court Case No. 03-CV-285, and agrees not to object to the Receiver's
> authority to sell, assign, transfer and convey the assets as set forth in the
> Receiver's "Motion to Sell All Equipment, Accounts Receivable, Inventory,

5

Intangible Assets and Real Estate of Communications Products Corporation and for Certain Other Relief" as modified by the terms of this Agreement. This paragraph shall not be construed as an admission by [Basic Products] or CPC of any fact or allegation made in the proceeding before the Grant County Circuit Court as Case Number 03-CV-285 or as a waiver of any defense to any claim brought by the Receiver or the Bank against CPC or its officers, directors, shareholder, or an related party after the date of this Agreement.

Virnich and Moores were not parties to this agreement. On September 10, 2003, the court issued an order appointing defendant Polsky as receiver and authorizing him to sell the assets of Communications Products.

After the receivership action began, defendants Vorwald and Polsky took control of Communications Products' operations and publicly disclosed the appointment of the receiver. As receiver for Communications Products, Polsky filed an action against plaintiff Virnich and Moores in the Circuit Court for Grant County (Polsky v. Virnich & Moores, case no. 04-cv-285) for breach of fiduciary duty as corporate directors and officers of Communications Products. After a trial on the action, the court entered judgment on January 17, 2007, against plaintiff Virnich and Moores in the amount of $6.5 million. Virnich and Moores have appealed from the judgment; their appeal is pending in the Wisconsin Court of Appeals.

D.  Derivative Suit

On several occasions, plaintiff Virnich and Moores asked defendant Polsky to

6

investigate Communications Products' concerns that defendant American Trust had engaged in misconduct.  Polsky has refused.

Plaintiff Basic Products, plaintiff Virnich and Moores have sought to bring their own derivative action against defendant American Trust on behalf of Communications Products. On May 15, 2007, Communication Products filed a motion for dismissal of Polsky as receiver, or alternatively, for an order enjoining him from taking any action with respect to the corporation.  On June 21, 2007, a hearing was held before Judge VanDeHey in the receivership action on Communications Products' motion to discharge defendant Polsky. Judge VanDeHey denied the motion and stayed a ruling on plaintiffs' motion to bring a derivative action.

Plaintiffs have suffered damages that include the loss of Virnich's salary and director's fees, Basic Products' management fees, legal fees and expenses, rights as shareholders and loss of investment in the Virnich entities.


OPINION

Plaintiffs have asserted a number of legal theories, including an alleged conspiracy by defendants to injure plaintiffs' reputation, trade, business or profession in violation of Wis. Stat. § 134.01 and to restrain plaintiffs from performing a lawful act or acts in violation of Wis. Stat. § 134.01, negligence and interference with contractual relations between plaintiffs

7

and Communications Products Corporation.  For their part, defendants have asserted several grounds for dismissal of plaintiffs' claims, including, among others, waiver, judicial estoppel and a "shareholder-standing" defense, grounded in corporate law principles.   It is unnecessary to consider plaintiffs' theories or the arguments for dismissal presented by defendants, because I agree with defendants that plaintiffs' claims can be brought only on behalf of Communications Products Corporation and not in a direct action by plaintiffs.

The parties do not dispute that Wisconsin law governs plaintiffs' claims.  <u>RLI Insurance Company v. Conseco, Inc.</u>, 543 F.3d 384, 390 (7th Cir. 2008) ("When neither party raises a conflict of law issue in a diversity case, the applicable law is that of the state in which the federal court sits.")  Wisconsin law adheres to the well-established corporate law principle that shareholders of a corporation may not maintain actions individually to redress injuries to the corporation.  <u>Krier v. Vilione</u>, 2009 WI 45, ¶ 33, 317 Wis. 2d 288, 312, 766 N.W.2d 517, 528; <u>Notz v. Everett Smith Group, Ltd.</u>, 2009 WI 30, ¶ 20, 316 Wis. 2d 640, 653-654, 764 N.W.2d 904, 910.  This is known as the shareholder-standing rule.  <u>Rawoof v. Texor Petroleum Co., Inc.</u>, 521 F.3d 750, 757 (7th Cir. 2008).  In determining whether a claim should be brought by an individual or on behalf of the corporation, the Wisconsin supreme court has explained that the underlying question is whether "the primary injury is to the corporation or the shareholder." <u>Notz</u>, 2009 WI 30, ¶ 23.  "Where the injury to the corporation is the primary injury, and any injury to stockholders secondary, it is the

8

derivative action alone that can be brought and maintained." <u>Rose v. Schantz</u>, 56 Wis. 2d 222, 229-30, 201 N.W.2d 593, 598 (1972).

An injury is primarily to the shareholder if it is one that "affects a shareholder's rights in a manner distinct from the effect upon other shareholders." <u>Notz</u>, 2009 WI 30, ¶ 23 (quoting <u>Jorgensen v. Water Works Inc.</u>, 2001 WI App. 135, ¶ 16, 246 Wis. 2d 614, 624, 630 N.W.2d 230, 235). For example, in <u>Jorgensen</u>, 2001 WI App 135, ¶¶ 18-19, the court of appeals held that minority shareholders could proceed on their allegations that shareholder-directors stopped making distributions to some minority shareholders while continuing to pay themselves distributions. Such a claim supported a direct action because the plaintiffs were affected distinctly as minority shareholders.

In contrast, if the plaintiff shareholder suffers an injury that is derivative of an injury to the corporation, he is limited to bringing a derivative action on behalf of the corporation. In <u>Rose</u>, 56 Wis. 2d at 229-30, the plaintiff alleged that the corporate directors threatened to pay corporate obligations before they became due, to redeem stock in the corporation and to allow the president to resign as part of a plan to deplete corporation cash reserves. Although such behavior harmed the shareholders, the state supreme court concluded that primary injury was to the corporation. Similarly, in <u>Notz</u>, 2009 WI 30, ¶ 23, the supreme court concluded that the injury caused by the majority shareholder's alleged breach of fiduciary duty was an injury primarily to the corporation because "all of the shareholders

9

were affected equally."

Finally, in <u>Krier v. Vilione</u>, 2009 WI 45, ¶ 34, the state supreme court concluded that neither shareholders, nor sister, subsidiary or related corporations could bring a direct action to recover damages caused allegedly by accountants who failed to disclose or prevent misappropriation of funds from a corporation.  The facts of <u>Krier</u> are useful in applying the "shareholder-standing" rule to the present case.  In <u>Krier</u>, the plaintiffs were individual and corporate entities and former shareholders of EOG Environmental.  The plaintiffs alleged that a shareholder of EOG Environmental had misappropriated funds and that the accountants of EOG Environmental had assisted in the misappropriation and failed to disclose the misappropriation to the plaintiffs, causing the plaintiffs damages.  The plaintiffs asserted claims similar to plaintiffs' claims in the present case, including injury to business, civil conspiracy, negligence, negligent training and supervision and violations of Wis. Stat. § 134.01.  They alleged that their damages were separate and distinct from those suffered by EOG Environmental, but the supreme court concluded that the injury caused by the accountants belonged primarily to EOG Environmental, and "as a result, EOG Environmental or its shareholders could have made a [derivative] claim against the accountants." <u>Krier</u>, 2009 WI 45, ¶ 29. The court stated that "[b]eing damaged . . . without more, does not automatically confer standing.  The universe of entities or people who could be affected or damaged by a corporation that ceases to do business is without bounds." <u>Id.</u>

10

at ¶ 20.

As in <u>Krier</u>, <u>Notz</u> and <u>Rose</u>, in this case it is the corporation, not the shareholders or related entities, that has suffered the primary injury caused allegedly by defendants' actions. Plaintiffs' claims of civil conspiracy, interference with contractual relations, negligence and negligent training and supervision relate solely to the effect of the receivership action and defendants' related actions on Communications Products. According to plaintiffs, it was because of the receivership that Communications Products could not perform its contracts, repay its loans or continue business. Thus, the injuries arising out of the receivership are primarily injuries to Communications Products.

Although plaintiffs contend that their claims are based on injuries "separate from the injuries to [Communications Products]," they have alleged no injuries that are direct, personal and independent of the injuries to the corporation and distinct from the injuries to other shareholders. The closest plaintiffs come to alleging individual and distinct injuries is when they allege that defendants made "statements" intended to injure Virnich's and Moores's reputation. However, plaintiffs allege no specific injuries resulting from these statements except those arising out of the injury to Communications Products. Their specific injuries include loss of compensation, fees, rights as shareholders, investment in the Virnich entities and "other business opportunities." These injuries are tied solely to the relative success and failure of Communications Products. As the Court of Appeals for the

11

Seventh Circuit explained in <u>Kagan v. Edison Brothers Stores, Inc.</u>, 907 F.2d 690, 692 (7th Cir. 1990), if "[the corporation's] demise provides the injury, so the [plaintiffs'] loss is derivative . . ." <u>See also</u> <u>Massey v. Merrill Lynch & Co., Inc.</u>, 464 F.3d 642, 646 (7th Cir. 2006) (although plaintiffs contended that they suffered an injury separate and distinct from other shareholders, plaintiffs' claims were derivative because, when stripped down, they were arguing essentially that third party had caused their corporation to fail).

Plaintiffs have not grounded their claims on any contract to which they, and not other shareholders, are parties, or alleged that defendants owed them a duty independent of their status as shareholders. <u>Krier</u>, 2009 WI 45, ¶ 31 n.13.  In addition, they have not alleged that they suffered any harm that was distinct from that of other shareholders.  Nor could they.  Plaintiff Basic Products owned 100% of Communications Products.  Thus, Basic Products could not argue that it suffered harm that was distinct from that of other shareholders.

The shareholder-standing rule applies even when, as here, the corporation has only a small number of shareholders or is a single-shareholder entity.  <u>Kush v. American States Insurance Co.</u>, 853 F.2d 1380, 1383 (7th Cir. 2000).  As the Court of Appeals for the Seventh Circuit has pointed out, denying standing to a sole shareholder to sue for harms to the corporation, although seemingly "harsh, or, at least, counterintuitive," is justified because the sole shareholder elects to use the corporate form.  <u>Id.</u> at 1384.  "That form [provides]

12

several advantages over operations as an unincorporated sole proprietorship, not the least of which [is] limitation of liability.  In return, [the shareholder gives] up several prerogatives, including that of direct legal action to redress an injury to him as primary stockholder in the business."  Id.

    As in Kush, because plaintiffs chose to operate Communications Products under the corporate form, they have limited their personal liability for debts incurred in the name of the corporation.  They have also given up the opportunity to seek direct compensation for the corporation's losses.  Only Communications Products can seek compensation from defendants on these claims.  I conclude that the claims in this case must be brought as a derivative action and that plaintiffs' claims in this suit must be dismissed.


                                    ORDER

    IT IS ORDERED that

    1.  The motions, dkt. #19 and dkt. #22, of defendants Jeffrey Vorwald, Michael Polsky, American Trust and Savings Bank and Beck, Chaet, Bamburger & Polsky, S.C., to dismiss the amended complaint filed by plaintiffs Daniel Virnich, Basic Products, Inc., Cepro, Inc. and Virdanco, Inc. are GRANTED.   Plaintiffs' amended complaint is DISMISSED.

    2.  The clerk of court is directed to enter judgment for defendants and close this case.

                                      13

Entered this 30th day of December, 2009.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge

14