IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DANIEL VIRNICH,                                      OPINION AND ORDER

               Plaintiff,                              09-cv-340-bbc

      v.

JEFFREY VORWALD, MICHAEL POLSKY,
BECK, CHAET, BAMBURGER & POLSKY, S.C. and
AMERICAN TRUST AND SAVINGS BANK

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This civil action for monetary relief arises from events related to the appointment of defendant Michael Polsky as receiver for plaintiff Daniel Virnich's former company, Communications Products Corp. Plaintiff contends that defendants Polsky, Jeffrey Vorwald, and American Trust and Savings Bank conspired to injure his reputation, trade, business or profession in violation of Wis. Stat. § 134.01. Following dismissal of this claim for pleading defects on May 11, 2010, plaintiff filed a second amended complaint. Defendants have filed motions to dismiss this complaint, asserting several grounds for dismissal, including failure to state a claim upon which relief may be granted, waiver, judicial immunity and preclusion.

1

Defendants also contend that this case should be stayed under the abstention principles in Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976).  After reviewing plaintiff's second amended complaint and defendants' motions, I conclude that plaintiff has failed to state a claim under Wis. Stat. § 134.01.  This conclusion makes it unnecessary to address defendants' additional grounds for dismissal.  Therefore, I am granting defendants' motions to dismiss and dismissing this case.

In ruling on a motion to dismiss for failure to state a claim, a court considers the allegations in the plaintiff's complaint, accepting them as true and drawing all reasonable inferences in the plaintiff's favor.  Savory v. Lyons, 469 F.3d 667, 670 (7th Cir. 2006).  From the second amended complaint, I find that plaintiff has fairly alleged the following facts relevant to the motions to dismiss.

## FACTS

### A.  The Parties

Plaintiff Daniel Virnich is a businessman and venture capitalist who is a citizen and resident of Florida.  Over the last 40 years, he has developed a favorable reputation members of the business community.  Through a series of corporate structures, plaintiff had a 50% ownership interest in Communications Products Corp., a former Delaware corporation with its principal place of business in Wisconsin.  Non-party Jack Moores held the other 50%

2

interest of Communications Products. (The direct owner of Communications Products was a holding company called Basic Products, Inc., which is owned indirectly by plaintiff and Moores.)

Defendant American Trust and Savings Bank is an Iowa banking institution with its principal place of business in Iowa. Defendant Jeffrey Vorwald is a citizen of Wisconsin. In 2003, he was employed by American Trust and Savings Bank as senior vice president. Before holding this position, he was vice president of commercial lending and correspondent banking. Defendant Beck, Chaet, Bamburger & Polsky, S.C. is a law firm incorporated in Wisconsin with its principal place of business in Wisconsin. Defendant Michael Polsky is a citizen of Wisconsin and a lawyer, partner and director at Beck, Chaet, Bamburger & Polsky, S.C. Since the mid-1990s, Polsky has acted as a court-appointed receiver in 100 or more cases. Of these receivership cases, approximately 10 to 20 percent have been involuntary, meaning against the will of the corporation involved. Polsky has also been involved in numerous other receiverships as a representative for other parties, and holds himself out as a legal expert in receivership matters.

B. Events Leading Up to the Appointment of Defendant Polsky as Receiver

Communications Products Corp. manufactured component parts for loudspeakers. From 1986 to 2002, it was a successful company employing as many as 250 people in the Lancaster, Wisconsin area and having total audited net profits in excess of $12 million. In 1987, plaintiff Virnich and Jack Moores became officers of Communications Products. Plaintiff acted

as a director of the company and received compensation.

Starting in 1986, Communications Products established an "intercompany receivable account" that was used to keep track of transactions between the company and related companies owned by plaintiff and Moores.  The account was maintained from 1986 to 2003 and was the subject of 16 certified audits by two accounting firms.  The audits were submitted to American Trust and made available to defendant Vorwald and others at the bank.  Also in 1986, Communications Products established a management fee that was paid to other companies owned by or associated with plaintiff.

In 1999, Communications Products entered into several loan agreements with defendant American Trust.  Communications Products disclosed its ownership structure, related parties' transactions and the intercompany receivable account to American Trust.  In connection with the loan agreements, the company agreed to retain at least $900,000 of net worth.  American Trust also requested personal guarantees of Communications Products debts from plaintiff and Moores, but they refused to give them.  Defendant Vorwald's first contact with Communications Products was in 1999.  He was aware of the relationship among plaintiff, plaintiff's holding companies and Communications Products, as well as the intercompany receievable account and management fees.  Defendant Vorwald became the primary American Trust officer in charge of the Communications Products account in approximately October 2002.

In late 2001 and 2002, Communications Products experienced financial problems.   In December 2002, plaintiff and Moores suspended equipment lease payments, compensation to

4

plaintiff and intercompany management fees.  Plaintiff discussed the cessation of management fees in a meeting with defendant Vorwald and another representative of American Trust in December 2002.  In January 2003, American Trust demanded personal guarantees and additional investment in Communications Products by plaintiff and Moores.  Plaintiff and Moores "committed" to infuse additional cash into the company, but refused to execute personal guarantees.  (Plaintiff does not explain the nature of the commitment.)

On April 24, 2003, defendant American Trust held a meeting at Communications Products with plaintiff, Moores and several management employees.  This meeting was the first time that defendant Vorwald had visited Communications Products' facilities since American Trust became the company's lender.  During the meeting, Vorwald requested additional collateral or repayment of certain obligations and insisted upon personal guarantees from plaintiff and Moores.  Plaintiff and Moores said that they were more than willing to infuse money into the company, but were unwilling to provide personal guarantees to American Trust.  Vorwald was "visibly upset" by plaintiff's and Moore's refusal to personally guarantee Communications Products' debt to American Trust.  However, Vorwald did not raise any concerns about Communications Products' solvency or say anything about appointing a receiver.

Around the time of the April 23, 2003 meeting, defendant Vorwald consulted with legal counsel to determine the requirements for appointing a receiver.  Vorwald told his immediate supervisor at American Trust, Thomas Utzig, that plaintiff and Moores were "bad guys" that were "looting" Communications Products.  Neither Vorwald or Utzig was a certified appraiser.

5

However, they made a "determination" that Communications Products was insolvent.

Around May 8, 2003, defendant Vorwald contacted Communications Products' other lender, First National Bank of Platteville, without the approval or knowledge of plaintiff, Moores or any other Communications Products representative. Vorwald told the bank of his intent to file a receivership action against Communications Products. Vorwald also contacted the FBI in an attempt to instigate a criminal investigation for bank fraud and income tax evasion. Utzig was aware of Vorwald's contacts with the First National Bank of Platteville and the FBI.

In early May 2003, defendant American Trust's counsel contacted defendant Polsky, telling him that American Trust was considering an involuntary receivership action against Communications Products and asking whether he would have any conflicts in acting as the receiver. American Trust said it would guarantee payment of Polsky's fees. Sometime later, Vorwald spoke to Polsky about a possible receivership action. In this conversation, Vorwald told Polsky that plaintiff and Moores were "bad guys." Polsky entered into a service agreement with American Trust, under which he and his law firm would receive compensation for his role as receiver.

On May 15, 2003, plaintiff and Moores presented a "turnaround plan" to American Trust. As part of the turnaround plan, Moores entered into a contract to sell his home in Colorado in order to move to Wisconsin and devote more time to Communications Products. Communications Products authorized its auditors to provide American Trust any information American Trust requested. In addition, plaintiff provided consolidated tax returns to Vorwald

6

and told American Trust that it was free to contact company personnel to discuss any issues that arose.

On May 28, 2003, plaintiff presented Vorwald and Utzig a proposed loan "workout agreement" regarding a particular $100,000 note. Utzig and Vorwald later testified in court that at this meeting, plaintiff told them that he wanted to liquidate the company, close it down and did not care about the jobs that would be lost. This was not true. Utzig also testified that plaintiff "put a gun to [their] head" about a workout agreement and that this meeting "got him smoking" and "Mr. Virnich got [him] smoking." Utzig stated that he was suspicious of plaintiff and, by early May, American Trust was "pretty certain what was going on and how much money had been milked out of this company."

On June 2, 2003, Vorwald told plaintiff that American Trust would take action to establish a receivership if Communications Products did not pay off the $100,000 loan obligation immediately. This was the first time plaintiff and Moores had heard anything about a possible receivership. Plaintiff wrote to Vorwald, informing him that appointment of a receiver would cause the termination of a valuable injection molding license that was a critical aspect of the company's business and would seriously damage the company's future growth prospects. Plaintiff and Moores offered in writing to pay off the $100,000 obligation, but only if American Trust met certain "conditions." Plaintiff and Moores also offered to inject more money into the company. Vorwald did not respond to plaintiff's letter.

C. The Receivership Action and Subsequent Acts of Polsky and Vorwald

7

On June 3, 2003, defendant American Trust brought an ex parte motion in the Circuit Court for Grant County, Wisconsin for appointment of a receiver for Communications Products. At the time, Communications Products was three days delinquent on a $100,000 note owed to American Trust.  American Trust's motion was based on Vorwald's affidavit, which Polsky had assisted in preparing.  In the affidavit, Vorwald stated that American Trust had "entered into discussions with [Communications Products] in an attempt to resolve American Bank's concerns with the decreasing collateral base, the failure of [Communications Products] to maintain the required tangible net worth, and the failure of [Communications Products] to operate at a break even or profitable level. . . ."  Vorwald further stated that although Communications Products had been operating at a small profit, it had paid a large dividend to its stockholders and transferred to related entities property and assets pledged as collateral to American Trust.  In addition, Vorwald averred that Communications Products had threatened to close unless American Trust agreed to its demands.  Finally, Vorwald averred that "CPC is in imminent danger of insolvency or is in fact insolvent, depending on the actual value received for its assets and the collectibility of its shareholder or amounts owed by the shareholder of CPC."

Polsky provided a schedule and balance sheet of Communications Products' financials to the receivership court, but the schedule did not include a certain building owned by Communications Products.  At this time, Communications Products was not insolvent and its fair market value was substantially higher than the balance sheet reflected.  On June 3, 2003, Judge Robert P. VanDeHey granted American Trust's motion and appointed defendant Polsky

as an interim receiver for Communications Products. At the time, Polsky had never met plaintiff or Moores. Neither plaintiff nor Moores was aware of the hearing that resulted in the court's appointment of a receiver.

On or around June 4, 2003, defendant Polsky visited Communications Products' plant and announced to all the employees there that the plant might be closing. Polsky met with union representatives and told them that they needed to support him as receiver or the company would be closed. Also, a few days after the receivership commenced, Polsky spoke to two Communications Products employees with whom plaintiff and Moores had long-term favorable relationships, telling them that plaintiff and Moores were "characters" who had created the most convoluted corporate structure he had ever seen.

Shortly after the receivership proceedings commenced, one of Communications Products' employees made a statement to the press to the effect of, "Why would a local bank do this to a local business?" Defendant Vorwald called the employee and told him that the bank had to put the company into receivership because plaintiff and Moores were taking excessive amounts of money out of it.

On June 5, 2003, defendant Vorwald emailed Polsky asking for a referral to a forensic accountant to investigate supposed fraudulent activities and stating that American Trust would fund an investigation of the "potential fraud." Polsky sought the receivership court's approval for the funding sought by Vorwald and American Trust and also sought to have American Trust released from any liability to Communications Products or plaintiff and Moores.

9

At a hearing on June 20, 2003, plaintiff and Moores contested the appointment of the receiver.  During a recess in the hearing, Vorwald told plaintiff and Moores that if they continued in their efforts to remove the receiver, American Trust would terminate funding to Communications Products.  At the hearing, Polsky testified in support of his own appointment, stating that the "insider transactions" involving plaintiff, Moores and the holding entities were unusual and not commercially reasonable.  He speculated that plaintiff and Moores were objecting only because they did not want the investigation to continue into the insider transactions.

After Polsky was appointed receiver, Vorwald stated in communications to Polsky that "the speaker cone business appears to be a nasty little niche industry with a shortage of integrity."  In his deposition testimony, Vorwald compared Communications Products to "a sweatshop operation" and stated that plaintiff's status as an attorney from out of state was a "red flag."  Sometime in September 2003, Vorwald stated that he wanted the receiver to "keep the pressure on" plaintiff and Moores and that he "want[ed] to give them something to ponder over the Thanksgiving and Christmas holidays."

In 2008, defendant Vorwald called a client of plaintiff, whom plaintiff had represented with regard to tax and estate planning issues for nearly 40 years, while the client was a patient in the hospital.  Vorwald made disparaging statements about plaintiff, telling the client that plaintiff was "raping" her with excessive fees.  Vorwald called the woman's husband, also plaintiff's client, and made similar remarks.  Vorwald asked the client whether she knew of any

10

of plaintiff's other clients.

### D.  <u>Derivative Suit</u>

On several occasions, plaintiff Virnich and Moores asked defendant Polsky to investigate Communications Products' concerns that defendant American Trust had engaged in misconduct. Polsky has refused, stating that such suit would lack merit.  Basic Products, plaintiff and Moores sought to bring their own derivative action against defendant American Trust on behalf of Communications Products.  Polsky objected to plaintiff's attempts to bring a derivative action, and the receivership court has stayed a decision on the matter.

### E.  <u>Fiduciary Duty Claims against Plaintiff and Moores</u>

Defendant Polsky, acting as receiver for Communications Products, commenced an action for breach of fiduciary duty against plaintiff and Moores in the Circuit Court for Grant County, <u>Polsky v. Virnich & Moores</u>, case no. 04-cv-285.  American Trust agreed to indemnify Polsky's legal counsel if the lawsuit was deemed frivolous.  Polsky sought more than $10 million in damages. At the time the lawsuit was filed, the amount due creditors (including American Trust) was approximately $1.5 million.  The lawsuit was covered extensively in the press.  Polsky's counsel made numerous statements to the press to the effect that plaintiff and Moores had looted the company and deserved to be punished, making references to Enron on a regular basis.

At the trial, Polsky testified against plaintiff and Moores.  He stated that he directed

11

Communications Products employees to discontinue the "insider" payments shortly after the receivership commenced, and testified that he believed that plaintiff and Moores "put their own self-interests ahead of the interest of the corporation." A jury found against plaintiff and Moores and judgment was entered against them on January 17, 2007. Polsky attempted to collect the judgment from plaintiff and Moores and arranged to have pleadings in the collection action served on plaintiff while he was appearing at a charity golf event. In addition, Polsky attempted to force a sheriff's sale of plaintiff's residence and freeze plaintiff and Moores' retirement accounts.

Plaintiff and Moores appealed the jury verdict. On January 28, 2010, the court of appeals reversed the trial court's ruling and dismissed the case. Polsky v. Virnich, 2010 WI App 20, ¶ 15, 323 Wis. 2d 811, 818, 779 N.W.2d 712, 716 (holding that although controlling precedent was not "sensible," it required conclusion that plaintiff owed no fiduciary duty to Communications Products' creditors and therefore could not be liable for breach of fiduciary duty where suit was for benefit of creditors). Polsky petitioned for review to the Wisconsin Supreme Court; the petition is pending. The receivership court has asked the parties how it should proceed, given the court of appeals' decision. Basic Products, the direct owner of Communications Products, has asked the court to remove Polsky as receiver and allow derivative claims against American Trust to proceed. American Trust has asked the court to stay any further proceedings pending a determination of Polsky's petition for review with the Supreme Court.

12

F.  Order Dismissing this Case and Reconsideration

Plaintiff commenced this suit on May 29, 2009, asserting several claims against defendants.  On December 30, 2009, the case was dismissed as to all of plaintiff's claims against defendant, on the ground that they were derivative claims belonging to Communications Products Corp.  On January 27, 2010, plaintiff moved to alter or amend the judgment pursuant to Fed. R. Civ. P. 59(e).  I granted this motion in May 2010 with regard to plaintiff's conspiracy claim under Wis. Stat. § 134.01 on the ground that the alleged injuries to plaintiff' reputation were non-derivative in nature.  Nevertheless, I dismissed plaintiff's conspiracy claim under Fed. R. Civ. P. 8, because he had failed to allege facts suggesting that all defendants in the alleged conspiracy acted with malice.  Specifically, I found that the allegations in the previous amended complaint did not suggest a malicious motive, but rather suggested that Vorwald and Polsky acted with the intent to maximize the assets available to Communications Products' creditors, primarily American Trust.  In addition, I found that the allegations of the existence of a conspiracy to be conclusory and speculative.   In response to this ruling, plaintiff filed a second amended complaint, alleging that defendants Vorwald, Polsky and American Trust violated Wis. Stat. § 134.01 by maliciously and wilfully forming "a conspiracy in furtherance of an unlawful plan to injure [his] reputation, trade, business, and profession."  Defendants have  moved to dismiss plaintiff's claims on several grounds, including failure to state a claim upon which relief may be granted, waiver, preclusion and judicial immunity.

13

OPINION

Fed. R. Civ. P. 12(b)(6) allows a court to a dismiss a claim or entire complaint if a party fails "to state a claim upon which relief can be granted."  Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 558 (2007).  The court must construe all of plaintiff's factual allegations as true and draw all reasonable inferences in plaintiff's favor.  Savory, 469 F.3d at 670.  However, courts are not required to accept "assertions of law or unwarranted factual inferences" contained within the complaint when deciding a motion to dismiss.  Stachowski v. Town of Cicero, 425 F.3d 1075, 1078 (7th Cir. 2005); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (when determining whether a complaint states a plausible claim for relief, court should disregard "mere conclusory statements" and consider only factual allegations.)

Wis. Stat. § 134.01 allows the imposition of criminal penalties on those who conspire to "willfully or maliciously injur[e] another in his or her reputation, trade, business or profession."  Wisconsin courts have interpreted this statute to provide a civil cause of action for those who are harmed by violation of this statute.  Radue v. Dill, 74 Wis. 2d 239, 245, 246 N.W. 2d 507, 511 (1976) (citing Judevine v. Benzies-Montanye Fuel & Wholesale Co., 222 Wis. 512, 524, 269 N.W. 295, 301 (1936)).  To prove a claim for conspiracy under Wis. Stat. § 134.01, a plaintiff

14

must prove that (1) the defendants acted together, (2) with a common purpose to injure the plaintiff's reputation and business, (3) with malice, and (4) the acts financially injured the plaintiff.  WI S JI-CIVIL 2820.

As explained in the previous order dismissing plaintiff's conspiracy claim, dkt. #52, plaintiff cannot get past first base on his conspiracy claim unless his complaint makes it more than speculative that defendant Vorwald, American Trust and Polsky formed a conspiracy for the purpose of maliciously injuring plaintiff's reputation, trade, business or profession.  I concluded in the previous order that plaintiff had not alleged sufficient facts to satisfy Fed. R. Civ. P. 8 with respect to the formation of a conspiracy or defendants' malicious motives; rather, plaintiff had relied solely on speculation and conclusory statements to support his conspiracy theory.  In addition, civil conspiracies require at least two actors with malice.  Plaintiff's allegations did not come close to suggesting that anyone but defendant Vorwald acted with malice toward plaintiff.

In his second amended complaint, plaintiff describes in detail the events leading up to the receivership and the defendants' role in the receivership and later events.  Despite the new details, the complaint still does not allege the facts necessary to suggest defendants' malice and the existence of a conspiracy.

A.  Malice

15

With respect to malice, plaintiff must allege facts suggesting that *at least two actors* intended to cause harm to plaintiff *for the sake of causing harm*, and not for some legitimate business reason. <u>Maleki v. Fine-Lando Clinic Chartered, S.C.</u>, 162 Wis. 2d 73, 86, 469 N.W.2d 629, 634 (1991) ("For conduct to be malicious under conspiracy law it must be conduct intended to cause *harm for harm's sake*.") (Emphasis added). The Wisconsin Supreme Court has explained that

> [U]nder § 134.01 'malice' demands more than an intent to do harm. Rather, it requires an intent to do 'wrongful' harm. Such harm does not include incidental harms that derive from a person's seeking competitive advantage. It requires inflicting a harm for the sake of harm as an end in itself, and not merely as a means to some further end legitimately desired such as hurting someone else's business by competition.

<u>Brew City Redevelopment Group, LLC v. Ferchill Group</u>, 2006 WI 128, ¶ 23, n.7, 297 Wis. 2d 606, 619, 724 N.W.2d 879, 886 (citations omitted). The court drew a line between conduct engaged in for the purpose of causing harm, which is malicious, and conduct engaged in for the purpose of improving one's competitive advantage, which only incidentally causes harm. The latter is not actionable under § 134.01. <u>Maleki</u>, 162 Wis. 2d at 87, 469 N.W.2d at 635. The court also held that when the record allows "substantially equal inferences" pointing to or against malice, the case should not be presented to a jury. <u>Id.</u> at 90.

Plaintiff's allegations fall short of stating a claim of malice by multiple defendants. Although plaintiff's second amended complaint contains many references to the defendants' "conspiring" and acting with "animosity, "maliciousness," a "malicious attitude" and "malicious intent," plaintiff's use of these buzz words is accompanied by the same speculative and

16

conclusory allegations that I rejected previously.  At best, plaintiff's allegations suggest only that defendant Vorwald acted with malice toward plaintiff.  However, I do not need to decide whether plaintiff has sufficient allegations to suggest maliciousness on Vorwald's part, because plaintiff has not alleged sufficient facts to suggest that any other person involved in the alleged conspiracy acted with intent to harm plaintiff for the sake of harming him.

As an initial matter, plaintiff does not respond to defendants' argument that any allegations regarding Utzig's supposed "malice" are irrelevant because Vorwald and American Trust, through Utzig, cannot conspire among themselves.  Def.'s Br., dkt. #59, at 8 (citing Elbe v. Wausau Hospital Center, 606 F. Supp. 1491, 1502 (W.D. Wis. 1985) ("[A] corporation cannot conspire with itself and . . . the acts of an agent are the acts of the corporation."); Bartley v. Thompson, 198 Wis. 2d 323, 343, n.11, 542 N.W.2d 227, 235 (Ct. App. 1995) (noting that individual members of the same entity cannot conspire with each other for purposes of § 134.01)).  Specifically, defendants contend that because Vorwald and Utzig are both agents of American Trust, there must be some other actor for a conspiracy to exist.  There is support for this proposition in Wisconsin law.  E.g., Wausau Medical Center, S.C. v. Asplund, 182 Wis. 2d 274, 296, 514 N.W.2d 34, 44 (Ct. App. 1994) (surgeon and his personal service corporation could not conspire under § 134.01); Ford Motor Co. v. Lyons, 137 Wis. 2d 397, 430, 405 N.W.2d 354, 367 (Ct. App. 1987) (parent company and its wholly owned subsidiary unable to conspire under § 134.01 because they had unity of interest and parent company had ability to exercise complete control over subsidiary).  Moreover, by failing to respond, plaintiff has waived

17

any objection to this argument.  Bell v. DaimlerChrysler Corp., 547 F.3d 796, 807 (7th Cir. 2008) ("The failure to develop this argument in any meaningful way leads us to conclude that the plaintiffs have waived it.")  Thus, plaintiff cannot state a claim unless he has sufficient allegations that someone outside American Trust, such as defendant Polsky, joined the conspiracy and acted with the requisite degree of malice.

Plaintiff tries to show that Polsky joined the conspiracy before becoming the receiver for Communications Products, plf.'s br., dkt. #62, at 29; Sec. Am. Cpt., dkt. #53, ¶ 28, but his allegations undermine any such showing.  He alleges that "[w]ithout any contact with Virnich and Moores and without doing an independent investigation regarding the need for a receiver, Polsky knowingly and intentionally joined Vorwald's plan with malicious intent to harm [plaintiff] and Moores' reputations," but this is actually an admission that Polsky had never met plaintiff before he was appointed as receiver and knew nothing about Communications Products Corp. or plaintiff until *American Trust's legal counsel* (not Vorwald) talked to Polsky about his availability and interest in acting as a receiver for Communications Products.  Further, plaintiff admits that Polsky is a professional receiver who has acted as a receiver in more than 100 cases, including involuntary receiverships, and that Polsky and his law firm were compensated for their role in the receivership.

Recognizing that it would be difficult, if not impossible, to show that a person develops malice toward a person he has never met and knows nothing about, plaintiff alleges (on "information and belief") that Vorwald told Polsky that plaintiff is a "bad guy" and that hearing

18

this caused Polsky to develop malice toward plaintiff and help Vorwald prepare a "false and misleading" affidavit in support of receivership.  Sec. Am. Cpt., dkt. #53, ¶¶ 28, 49 ("Although Polsky had never personally met Virnich and Moores at that time, upon information and belief, the information he received from Vorwald caused him to develop a malicious attitude toward [plaintiff] and Moores.")  Such an allegation is pure speculation, makes no sense, and does not provide any basis for inferring that Polsky developed an intent to harm plaintiff *for the sake of harming him*.

First, plaintiff's allegations concerning Polsky's involvement in his appointment as receiver do not support an inference that Polsky acted with malice toward plaintiff.  Plaintiff alleges that Polsky helped Vorwald draft an affidavit that contained false and misleading information because it stated that Communications Products "is in imminent danger of insolvency or is in fact insolvent, depending on the actual value received for its assets and the collectibility of its shareholder or amounts owed by the shareholder to [Communications Products]."  Plaintiff contends that this is false because the company was not insolvent and was a "going concern."  He alleges that, in addition to helping Vorwald prepare the affidavit, Polsky failed to make an independent evaluation of Communications Products before agreeing to serve as receiver, failed to use "fair valuation" as the basis for his conclusions about Communications Products' financial condition and miscalculated the company's value.

Defendants contend that even if Communications Products was not insolvent, there was ample support for Vorwald's statement that the company was "in imminent danger of

19

insolvency." In addition, defendants contend that there is no requirement in the Wisconsin receivership statutes that a potential receiver make an independent evaluation of a company before agreeing to act as receiver and no clear rule as to the valuation calculation that should be applied in determining a company's financial situation. Defendants make good points, to which plaintiff fails to respond, but they are unnecessary. Even if I accept plaintiff's conclusory statement that Vorwald's affidavit was false and that Polsky's valuation methods were wrong, plaintiff's allegations still far short of implying that Polsky had malicious motives toward plaintiff.

One can imagine a situation in which a defendant might make allegations about a plaintiff's business practices or financial state that are so blatantly false and removed from reality that a malicious motive could be inferred. This is not that case. Plaintiff has not alleged that defendants' calculations or allegations were blatantly incorrect. In fact, plaintiff admits that Communications Products was having financial difficulties, had defaulted on a loan and had participated in insider transactions. In such circumstances, Polsky's alleged assistance in preparing the affidavit and miscalculation of Communications Products' financial situation suggest that Polsky was acting appropriately in his role as receiver, rather than with an intent to harm plaintiff for the sake of harm.

With regards to Polsky's actions after he was appointed as a receiver, plaintiff has alleged nothing to suggest that Polsky took those actions with the intent to inflict wrongful harm on plaintiff. For example, filing a lawsuit against plaintiff, seeking punitive damages and later

20

attempting to collect on the judgment are all actions that are in line with his role as receiver, which is to maximize assets available to Communications Products' creditors.  Scholes v. Lehmann, 56 F.3d 750, 755 (7th Cir. 1995) (noting that receiver's "only object is to maximize the value of the corporations for the benefit of their investors and any creditors," and not finding an objection to receiver's bringing suit to recover corporate assets unlawfully dissipated by corporate shareholder); Cf. In re Linton, 136 F.3d 544, 546 (7th Cir. 1998) ("A creditor who had gotten nothing in the bankruptcy proceeding might sue the trustee for negligence in failing to maximize the assets available to creditors, or to the particular creditor.")  The fact that Polsky sought (and was initially awarded) substantial damages in the fiduciary action does not allow an inference of malice.  It is common for litigants to seek the full measure of available damages.  It is not enough for plaintiff to allege in conclusory manner that Polsky had "malicious" motives when undertaking that action.  In addition, even if some of Polsky's later actions suggest that Polsky developed a dislike for plaintiff, that is not enough to show malice and therefore state a claim for conspiracy.  Maleki, 162 Wis. 2d at 89, 469 N.W.2d at 635 ("Ascriptions of attitude even if true fall short of being evidence of malicious action or conduct.")

## B.  Existence of a Conspiracy

Even if some of Polsky's decisions could be construed as malicious actions, such as his arrangements to serve legal papers on plaintiff at a charity golf event or his statements to Communications Products' employees that plaintiff had looted the company, plaintiff's

allegations provide no basis for inferring that these actions were in furtherance of a conspiracy that had been formed between Polsky and Vorwald months or years before. "For a conspiracy to exist, there must be, at a minimum, facts that show some agreement, explicit or otherwise, between the alleged conspirators on the common end sought and some cooperation toward the attainment of that end." Bartley, 198 Wis. 2d at 342, 542 N.W.2d at 234 (internal quotations and citations omitted). "It is not enough that the defendants may have acted in concert or with a common goal." Id.

Plaintiff's theory is that defendants formed a conspiracy to injure his reputation and business *before* Communications Products entered receivership. Plf.'s br., dkt. #62, at 27, 29. According to his theory, part of defendants' plan to harm plaintiff was for Polsky to become receiver for Communications Products and to take actions that would injure plaintiff. Thus, any of Polsky's actions after the receivership that injured plaintiff's reputation would not have occurred "but for [Polsky's] wrongful appointment in the first instance." Id. at 29. If this theory is to make sense, plaintiff's allegations must support an inference that the conspiracy existed prior to the receivership. However, by plaintiff's own admission, Polsky did not know of plaintiff or Communications Products before American Trust asked him to serve as receiver. Plaintiff's allegations do not suggest that defendants formed a conspiracy; they suggest that Polsky, a professional receiver, was contacted by a creditor about a possible position as a receiver for a company that was having financial troubles and was delinquent on a loan. (Plaintiff admits that Polsky discussed a possible receivership with American Trust's counsel before Polsky ever talked

22

to Vorwald.)   Polsky accepted the position because it is his profession and he was being compensated.

In conclusion, plaintiff has failed to fix the pleading deficiencies that were present in its first amended complaint.  Even drawing all reasonable inferences in plaintiff's favor, plaintiff's allegations do not permit an inference that at least two actors, motived by malice or an intent to cause plaintiff harm for harm's sake, formed a conspiracy for this purpose.  Plaintiff's conspiracy theory is supported by nothing more than speculation and conclusory statements, and thus fails to state a claim.  Because plaintiff has had ample opportunity to repair these problems, I will dismiss his conspiracy claim with prejudice.


ORDER

IT IS ORDERED that the motion to dismiss, dkt. #56, filed by defendants Michael Polsky and Beck, Chaet, Bamberger & Polsky, S.C. and the motion to dismiss, dkt. #58, filed by defendants Jeffrey Vorwald and American Trust and Savings Bank are GRANTED and this case is DISMISSED with prejudice for plaintiff Daniel Virnich's failure to state a claim upon which relief may be granted.

Entered this 1st day of September, 2010.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

23